IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

JESSICA J. TAYLOR,                          )
                                            )
              Plaintiff,                     )
                                            )
v.                                          )        CASE NO.: 3:22-CV-01369-SAL
                                            )
EQUIFAX INFORMATION SERVICES,               )
LLC, EXPERIAN INFORMATION                    )
SOLUTIONS, INC., and HIGHER                  )
EDUCATION LOAN AUTHORITY OF THE             )
STATE OF MISSOURI, d/b/a MOHELA,            )
                                            )
              Defendants.                    )

## MEMORANDUM IN SUPPORT OF MOHELA'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW Defendant Higher Education Loan Authority of the State of Missouri d/b/a

MOHELA ("MOHELA"), by and through undersigned counsel, and for its memorandum in

support of its motion for judgment on the pleadings as to Counts I, II, and V of Plaintiff Jessica J.

Taylor's ("Plaintiff") First Amended Complaint ("Complaint" or "FAC") (Dkt. 26), states as

follows:

### SUMMARY OF THE NATURE OF THE CASE

As it pertains to MOHELA, this is an identity theft case. Plaintiff alleges that she learned

that another individual obtained several student loans that were attributed to Plaintiff. *See* FAC,

at ¶¶ 22-33. But MOHELA is not responsible for that identity theft or liable for any harm to

Plaintiff that may have resulted from a third party's alleged acts. In fact, MOHELA was

***completely uninvolved*** in the application for, approval of, or funding of the student loans in

Plaintiff's name. Moreover, MOHELA was not the ultimate decisionmaker as to whether

Plaintiff's claims of identity theft would be accepted or rejected.

The student loans at issue were approved, funded, and are owned by the United States Department of Education ("Department") under the William D. Ford Direct Loan Program ("Direct Loan Program" or "Direct Loans"), 20 U.S.C. § 1087a, *et seq*. Almost immediately after the disbursement of the student loans, the Department transferred servicing to MOHELA, a public instrumentality of the State of Missouri created by Missouri statute. *See* RSMo. § 173.360. When Plaintiff began to allege that she should not be responsible for the student loans, MOHELA worked diligently with Plaintiff to help her through the federally-mandated process (*see* 34 CFR § 685.215) required to discharge the Direct Loans on the basis of identity theft. *See* MOHELA's Answer to FAC ("Answer"), at ¶¶ 31, 33, 39, and Ninth Defense. The ultimate decision regarding Plaintiff's identity theft application was to be made by the Department, and it denied Plaintiff's application. *Id.*, at ¶¶ 40-41. Thereafter, MOHELA continues to service the student loans for the Department.

Nevertheless, Plaintiff filed this action against MOHELA asserting claims for: (i) violations of the Fair Debt Collection Practices Act ("FDPCA"), 15 U.S.C. § 1692, *et seq.* (Count I); (ii) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) (Count II); and, (iii) violations of the South Carolina Consumer Identity Theft Protection Act (the "Act"), S.C. Code § 37-20-110, *et seq.* (Count V). *See* FAC, at ¶¶ 60-75 (Counts I and II), and ¶¶ 90-97 (Count V). Judgment in MOHELA's favor is warranted on each of Plaintiff's alternative claims.

Plaintiff's FDCPA claim against MOHELA (Count I) suffers from two independent, fundamental legal deficiencies. *First*, the FDCPA claim fails because MOHELA is not a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6)(F)(iii), as it began servicing these student loans prior to default. *See* Answer, at Fifth Defense. *Second*, MOHELA is exempted from liability under the FDCPA because its actions were, at all pertinent times, incidental to its "bona fide fiduciary

obligation" to the Department, 15 U.S.C. § 1692a(6)(F)(i).  *See* Answer, at Sixth Defense.

Plaintiff's FCRA claim against MOHELA (Count II) fails as a matter of law because the FAC fails to plausibly allege that MOHELA furnished any information that was inaccurate or incomplete, especially in view of the Department's conclusion that Plaintiff was not entitled to a discharge on the basis of identity theft.  Moreover, Plaintiff failed to plead key factual allegations supporting her claim that MOHELA did not do a reasonable investigation under 15 U.S.C. § 1681s-2(b) of Plaintiff's disputes.

Plaintiff's claim against MOHELA (Count V) under the Act also fails as a matter of law. The statutory provisions relied upon by the FAC apply to the credit reporting agencies only, not MOHELA, the furnisher of the information. *See* Answer, at Twenty-Third Defense.  Therefore, Plaintiff has not stated a viable state statutory claim against MOHELA.

Accordingly, this Court should enter judgment on the pleadings on Counts I, II, and V, the sole claims against MOHELA, and dismiss MOHELA with prejudice.

### STATEMENT OF FACTUAL BACKGROUND

MOHELA respectfully offers the following concise statement of facts that are germane to the issues framed by MOHELA's motion.

### A.    MOHELA

The General Assembly of the State of Missouri created MOHELA in 1981 in order to ensure that all eligible postsecondary education students have access to guaranteed student loans. The legislation was amended[1] to provide MOHELA with generally expanded powers to finance, originate, acquire, and service student loans, including, but not limited to, those guaranteed or insured pursuant to the Higher Education Act of 1965 ("HEA").

---

[1] Effective August 28, 1994, August 28, 2003, August 28, 2007 and May 2, 2008.

MOHELA is, and at all times material hereto was, a public instrumentality and a body politic and corporate of the State of Missouri. *See* Answer, at ¶ 5 and First Defense. Missouri statute declares MOHELA a state instrumentality: "The authority is hereby declared to be performing a public function and to be a separate public instrumentality of the state." RSMo. § 173.415.

MOHELA is organized and exists under the Missouri Higher Education Loan Authority Act, RSMo, §§ 173.350 - 173.445. *Id.* MOHELA's mission is "to assure that all eligible postsecondary education students have access to student loans that are guaranteed or insured, or both," and to provide funding for capital and technology projects at Missouri's public colleges and universities. RSMo. § 173.360. MOHELA is required by Missouri law to contribute hundreds of millions of dollars to the State's Lewis and Clark Discovery Fund. RSMo. § 173.385.2. MOHELA is also authorized to service student loans for any owner thereof, regardless of whether such student loans are originated in Missouri or outside Missouri. RSMo. § 173.385.1(18).

Under the HEA and related statutes and regulations, the Department issues a variety of loans and grants to students. This lawsuit focuses on student loans issued by the Department under the Direct Loan Program, through which the federal government provides loans directly to eligible student borrowers. Rather than self-service the Direct Loans, the Department contracts with third-party servicers to perform that function. 20 U.S.C. § 1087f(a). Every aspect of that servicing is highly regulated by the Department.[2]

In 2011, MOHELA was selected through a competitive process by the Department to

---

[2] The Department administers loan repayment generally (34 C.F.R. §§ 682.209, 685.208), income-based or income-contingent repayment plans (*Id.* §§ 682.215, 685.209), and deferments and forbearances (*Id.* §§ 682.210-211, 685.204-205). The Department has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or its contract with the Department. *Id.* § 682.700(a).

service Direct Loans on a national basis.  MOHELA's servicing contract with the Department requires MOHELA to service loans issued under the Direct Loan Program.  MOHELA remains a third-party agent of the Department and is not itself a party to the underlying Direct Loan arrangements or contracts between the Department and its borrowers.

### B.     Plaintiff and the Student Loans At Issue

The FAC alleges Plaintiff learned that student loans were disbursed in her name.  *See* FAC, at ¶¶ 22-33.  Plaintiff alleges these loans disbursed in July 2018 and December 2019.  *Id.*, at ¶¶ 22, 26.  MOHELA received each of the loans at issue for servicing soon after disbursement and, accordingly, these loans were not in default at the time MOHELA began servicing them.  *See* FAC, at ¶ 31, Answer, at ¶ 31, and MOHELA's Fifth Defense.  Upon learning of Plaintiff's dispute with respect to her responsibility for the student loans, MOHELA worked with Plaintiff to obtain a completed identity theft application and the required accompanying information, as mandated by federal law for Direct Loans pursuant to the federal regulations at 34 CFR § 685.215.  *See* Answer, Ninth Defense.  MOHELA continued to service the loans while that process was underway. Ultimately, the Department informed MOHELA that Plaintiff's application for a discharge on the basis of identity theft was denied.  *See* Answer, at ¶¶ 40, 41, and Ninth Defense.  Thus, MOHELA is still servicing the student loans at issue at the behest of the Department, which owns the loans. *Id.*

### C.     MOHELA's Meet-and-Confer Attempts And Prior Motion

While exempt from the meet-and-confer requirements of Local Rule 7.02(D), MOHELA nevertheless attempted to informally resolve the issues framed by this motion to conserve judicial and party resources.  On or about April 29, 2022, MOHELA sent Plaintiff's counsel a detailed, seven page letter laying out MOHELA's position on the background of this matter and explaining

the deficiencies in Plaintiff's claims.  Plaintiff's counsel immediately responded that Plaintiff would not dismiss MOHELA from this case.  To date, Plaintiff has not provided a substantive response to MOHELA's correspondence.

On May 25, 2022, MOHELA filed its original Answer and Affirmative Defenses (Dkt. 21).  Contemporaneously, MOHELA filed its original motion for judgment on the pleadings (Dkt. 22).  On June 7, 2022, Plaintiff filed her response to MOHELA's motion for judgment on the pleadings (Dkt. 27) and requested that MOHELA's motion be denied as moot because Plaintiff filed the FAC (Dkt. 26).

The FAC includes additional factual allegations and background context in the Introduction and Factual Allegations sections.  *See* FAC, at ¶¶ 8-40.  The FAC, however, does not drop any of the deficient claims against MOHELA (despite MOHELA's notices to Plaintiff both informally through its counsel's letter and formally through its original motion) and does not include any material, substantive changes to Counts I, II, and V.  The only amendments to the three alternative substantive claims against MOHELA are grammatical or non-substantive in nature.  Because MOHELA believes the FAC does not remedy the deficiencies addressed in MOHELA's original motion, MOHELA files its Answer to the FAC and this motion for judgment on the pleadings directed at the FAC.

## ARGUMENT

### A.    Legal Standard

FED. R. CIV. P. 12(c) permits a party, at any time after the close of the pleadings, to move for a judgment on the pleadings.  Pleadings are considered closed after the filing of the complaint, answer, and any counter or cross-claims.  *See* FED. R. CIV.P. 7(a).  With respect to MOHELA, the pleadings are now closed as the FAC and Answer have been filed, and Plaintiff exercised her option to amend the operative complaint once as a matter of right.

"Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Van Connor v. One Life Am., Inc.*, 546 F. Supp. 3d 458, 460–61 (D.S.C. 2021), *motion to certify appeal denied*, No. 6:19-CV-03283-DCC, 2021 WL 4272614 (D.S.C. Sept. 21, 2021) (quoting FED. R. CIV. P. 12(c)). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Deutsche Bank Nat'l Trust Co. v. IRS*, 361 F. App'x. 527, 529 (4th Cir. 2010)). "The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is that on a 12(c) motion, the court 'consider[s] the answer as well as the complaint' and 'documents incorporated by reference in the pleadings.'" *Id.* (quoting *Fitchett v. Cty. of Horry, S.C.*, C/A No. 4:10-cv-1648-TLW-TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011)) (citations omitted).

In considering a motion for judgment on the pleadings, the Court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (quoting *Blankenship v. Manchin,* 471 F.3d 523, 529 (4th Cir. 2006)) (internal quotations omitted). A motion for judgment on the pleadings may be based on an affirmative defense, including facts of which a court can take judicial notice. *See, e.g., Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1281 (D. Kan. 1997); *Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1132 (D. Kan. 2018), *aff'd*, 768 F. App'x 847 (10th Cir. 2019).

### B.    MOHELA Is Entitled To Judgment On The Pleadings With Respect To The FAC's FDCPA Claim (Count I).

There are two independent reasons that Plaintiff's FDCPA claim against MOHELA fails as a matter of law. *First*, the FDCPA claim fails because MOHELA is not a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6)(F)(iii), as it began servicing these student loans prior to default.

*Second*, MOHELA is exempted from liability under the FDCPA because its actions were, at all pertinent times, incidental to its "bona fide fiduciary obligation" to the Department as set forth in 15 U.S.C. § 1692a(6)(F)(i).

### 1. MOHELA is not a "debt collector" as it began servicing the student loans at or near their origination and prior to default.

Plaintiff's FDCPA claim should be dismissed because MOHELA is not a "debt collector" relative to the student loans at issue. Under 15 U.S.C. § 1692a(6)(F)(iii), a person collecting a debt is not a "debt collector" if the collection activity "concerns a debt which was not in default at the time it was obtained by such person."

Numerous federal courts, including this one, have held that a student loan servicer that begins servicing a student loan prior to default is not a "debt collector" under the FDCPA. *See, e.g., Bracken v. Bank of Am., N.A.*, 2014 WL 7369570, at *4 (D.S.C. Dec. 29, 2014)*; McPhail v. Wells Fargo Dealer Servs.*, 2013 WL 6839657, at *2 (E.D.N.C. Dec. 23, 2013), *aff'd sub nom. McPhail v. Wells Fargo Dealer Servs., Inc.*, 575 F. App'x 181 (4th Cir. 2014) ("In the Fourth Circuit, it is well-settled that the servicer of a loan is not a debt collector under the FDCPA, at least where it began servicing the loan before the borrower's default."); *Mungo-Craig v. Navient Sols., Inc.*, No. 5:17-CV-5-BO, 2017 WL 3037566, at *3 (E.D.N.C. July 18, 2017); *Diaz v. First Marblehead Corp.*, 643 Fed. Appx. 916, 918-19 (11th Cir. 2016); *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed. Appx. 458, 459 (5th Cir. 2004).[3]

---

[3] *See also Khmaissi v. Navient Sols., LLC*, No. C16-5994 BHS, 2018 WL 4811898, at *3 (W.D. Wash. Oct. 4, 2018) (student loan servicer is not a "debt collector" under the FDCPA where it began servicing the loan prior to default); *Neal v. Am. Educ. Servs.*, 2019 WL 1746065, at *5-6 (E.D. Cal. 2019) (same); *Jones v. Pennsylvania Higher Educ. Assistance Agency*, No. CV1600107RSWLAFMX, 2017 WL 4594078, at *10-11 (C.D. Cal. July 24, 2017) (same); *Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX), 2016 WL 890297, at *11 (C.D. Cal. Mar. 8, 2016) (same); *Spyer v. Navient Solutions, Inc.*, 2016 WL 1046789, at *3 (D. N.J. 2016)

Conveniently, the FAC omits the allegation from the original Complaint (Dkt. 1-1, at ¶¶ 13-14 (Factual Allegations)) that MOHELA began servicing the student loans at issue "[a]lmost since their inception[,]" which MOHELA noted in its original motion. Notably, however, the FAC does not (and cannot) allege that the student loans at issue were in default when servicing was transferred to MOHELA. Nor are there any allegations that servicing was performed by the Department or any other entity prior to MOHELA. MOHELA's Answer confirms that it received each of the student loans at issue for servicing almost immediately after they were disbursed and, accordingly, those loans were not in default at the time MOHELA began servicing them. *See* Answer, Fifth Defense. The FAC does not (and cannot) remedy the fundamental deficiency that MOHELA is simply not a "debt collector," as defined by the FDCPA, where it began servicing the student loans prior to default. Thus, dismissal of Count I is appropriate.

### 2. MOHELA is also exempted from liability under the FDCPA because it was, at all pertinent times, acting in its capacity as a bona fide fiduciary to the Department.

"The FDCPA defines a 'debt collector' as 'any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Forman v. Texas Guaranteed Student Loan Corp.*, No. 5:13-CV-691-D, 2014 WL 6851712, at *2 (E.D.N.C. Dec. 3, 2014), *aff'd*, 600 F. App'x 161 (4th Cir. 2015) (quoting 15 U.S.C. § 1692a(6)). "The FDCPA excludes from the definition of debt collector 'any person collecting or attempting to collect any debt ... to the extent such activity ... is incidental to a bona fide fiduciary obligation.'" *Id.* (quoting § 1692a(6)(F)(i)); *see also Zarder v. Texas Guaranteed Student Loan Corp.*, No. 5:18-CV-1059-DAE, 2019 WL 2565272, at *2 (W.D. Tex. Mar. 4, 2019) (same);

_____

(same); and *Skerry v. Massachusetts Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47, 54 (D. Mass. 1999) (same).

*Murungi v. Texas Guaranteed*, 693 F. Supp. 2d 597, 608 (E.D. La.), *aff'd*, 402 F. App'x 849 (5th Cir. 2010) (same).

As raised in its Answer (Sixth Defense), MOHELA is not a "debt collector" because its actions with respect to Plaintiff were "incidental" to its "*bona fide* fiduciary obligation" to the federal government. *See Forman*, 2014 WL 6851712, at *2; *Zarder*, 2019 WL 2565272, at *2; *Murungi*, 693 F. Supp. 2d at 608. At their core, Plaintiff's claims against MOHELA relate to its activities to service the Direct Loans that Plaintiff alleges she is not responsible for. *See generally* FAC. The process for discharging a Direct Loan on the basis of identity theft is governed by 34 CFR § 685.215. As mandated by the Department, these procedures require MOHELA to obtain certain information from Plaintiff (*e.g.*, name, SSN, DOB, copy of driver's license, and other information, like a signature exemplar) and to obtain certifications from Plaintiff that she did not sign the promissory note and did not receive or benefit from the proceeds of the loan. *Id.*

The FAC concedes that the student loans at issue were made pursuant to a Master Promissory Note. *See* FAC, at ¶¶ 22, 24. Tellingly, however, the FAC does not attach the Master Promissory Note, which clarifies that the student loans were made under the Direct Loan Program and that the borrower promises "to pay [the Department] all loan amounts disbursed under the terms of this [Master Promissory Note]." The Master Promissory Note further states that "Direct Loans are made by the U.S. Department of Education. We contract with servicers to process Direct Loan payments, deferment and forbearance requests, and other transactions, and to answer questions about Direct Loans." MOHELA is not mentioned in the Master Promissory Note, and there is no legitimate dispute that MOHELA's role was simply that of the servicer since very

shortly after the origination of the student loans.[4]

In summary, MOHELA was not acting as a "debt collector" under the FDCPA. Its central function was to service the student loans at issue and assist Plaintiff in the required identity theft process. To the extent some of MOHELA's actions, including sending correspondence or reporting on Plaintiff's credit file, could be perceived as collection activities, those activities are only secondary to its primary purpose of servicing loans for the Department to which it had a *bona fide* fiduciary obligation. Thus, MOHELA is exempt from the FDCPA on the alleged facts of this case.

### C    MOHELA Is Entitled To Judgment On The Pleadings With Respect To The FAC's FCRA Claim (Count II).

Through the FAC, Plaintiff includes additional factual allegations regarding her communications with MOHELA and the credit reporting agencies. Despite this additional color, however, the FAC still fails to plausibly allege that MOHELA's furnishing of information to the credit reporting agencies was inaccurate. That is largely because the FAC now concedes that Plaintiff's application for a discharge based on identity theft was denied (although the FAC incorrectly asserts that it was denied by MOHELA, not the Department). *See* FAC, at ¶¶ 35, 38, 40, and 41, and Answer, at ¶¶ 35, 40, and 41, Seventh Defense, and Ninth Defense. Moreover, Plaintiff also fails to allege underlying facts regarding the credit reporting agencies' transmission

---

[4] While clearly embraced by the FAC's allegations, MOHELA does not attach the Master Promissory Note to its motion because the FAC does not allege facts contrasting MOHELA's arguments regarding the owner of the student loans or its role as servicer. Should the Court wish to review the Master Promissory Note, MOHELA is willing to file the same under seal or in a redacted format.

of the disputes to MOHELA or details regarding when the credit reporting agencies reported the results of their investigations of the disputes to Plaintiff. *See, e.g.,* FAC, at ¶¶ 36, 43, 45, and 70.

The process for discharging a Direct Loan on the basis of identity theft is governed by 34 CFR § 685.215. In the case of Plaintiff's allegation of identity theft, the federal regulations require Plaintiff to certify that she did not sign the promissory notes, certify that she did not receive or benefit from the proceeds of the loan, provide certain identifying information, including name, social security number, date of birth, copy of driver's license, and other information, like signature exemplars. 34 CFR § 685.215(c)(5). As the code of federal regulations clarifies, the Department (not MOHELA) makes the final decision as to whether to grant a discharge based on identity theft. *See* 34 CFR § 685.215(c) ("To qualify for a discharge under this paragraph, the borrower must submit to the Secretary an application for discharge on a form approved by the Secretary."); *see also* 34 C.F.R. § 600.2 ("Secretary: The Secretary of the Department of Education or an official or employee of the Department of Education acting for the Secretary under a delegation of authority."). MOHELA worked with Plaintiff to pursue her identity theft applications in the attempt to obtain a discharge of the Direct Loans, but Plaintiff's applications were ultimately rejected by the Department. *See* Answer, at ¶¶ 40 and 41, and Ninth Defense.

The FCRA ensures the accurate furnishing of credit information. *See* 15 U.S.C. § 1681s-2(a). Section 1681s-2(b) of the FCRA "requires a furnisher of credit information … on receiving notice from a CRA that a consumer has disputed a debt, to investigate the dispute, to report the results of the investigation to the CRA, and, if the furnisher concludes that the disputed debt is inaccurate, incomplete, or unverifiable, to take certain additional remedial measures." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010), *aff'd*, 413 F. App'x 925 (8th Cir. 2011) (granting judgment on FCRA claim because plaintiff could not prove that the debt

reported by the furnisher to the CRAs was inaccurate); *see also Heras v. Nelnet, Inc.*, 2017 WL 4586334, \*5 (C.D. Cal. Apr. 28, 2017) ("Upon being notified of a dispute by a CRA, a furnisher must investigate and, if necessary, correct the information it reports.") (internal quotations and citations omitted); *Benge v. CB Indigo*, 2019 WL 266965, \*4 (C.D. Cal. Jan. 18, 2019) ("Section 1681s-2(b) imposes duties and procedures a furnisher must follow to investigate and correct reported information when disputed").

The FAC's FCRA claims against MOHELA fail because, despite the inclusion of additional factual allegations, Plaintiff still does not plausibly allege (and will be unable to prove) facts establishing that MOHELA reported inaccurate information to the CRAs. *See Schueller v. Wells Fargo & Co.,* 559 F. App'x 733, 736–37 (10th Cir. 2014) (affirming dismissal where the plaintiff failed to allege facts sufficient to show that the information furnished by a creditor was inaccurate); *Chiang v. Verizon New England Inc.,* 595 F.3d 26, 37–38 (1st Cir. 2010) (affirming summary judgment dismissing FCRA claim because plaintiff failed to allege any actual inaccuracies in credit reporting that a reasonable investigation would have uncovered); *Edeh*, 748 F. Supp. 2d at 1039 (holding "it is difficult to see how a plaintiff could prevail on a claim for damages based on an unreasonable investigation of disputed data without a showing that the disputed information ... was, in fact, inaccurate.") (internal quotations omitted); *Finley v. Capital One*, 2017 WL 1365207, \*3 (N.D. Cal. Apr. 14, 2017) (granting motion for judgment on the pleadings on Section 1681s-2(b) claim where "the complaint does not identify what inaccurate information Capital One furnished to the CRAs Equifax, TransUnion, and Experian"); *Heras,* 2017 WL 4586334, at \*5 (dismissing Section 1681s-2(b) claim, finding that "plaintiff's failure to allege how the student loan information on his credit reports was inaccurate is [ ] fatal to his claims").

Here, MOHELA's furnishing of information to the credit reporting agencies was, at all times, accurate. On behalf of the Department and as legally required, MOHELA furnished tradelines on Plaintiff's credit report regarding the Direct Loans. Consistent with 34 CFR § 685.215, MOHELA then repeatedly sought to assist Plaintiff in completing the federally-mandated ID theft package. But the Department ultimately concluded that Plaintiff's applications for a discharge based on identity theft should be denied. Thus, consistent with its obligations to the Department, MOHELA furnished accurate information regarding the status of the student loans. Plaintiff may disagree with the Department's decision (although she has chosen not to add the Department, a necessary party, to this case), but the FAC fails to plausibly allege that MOHELA's reporting was inaccurate or incomplete at any time.

In addition, the FAC is deficient with respect to allegations regarding MOHELA's receipt of disputes from the credit reporting agencies and investigation into those disputes. In conclusory fashion, the Complaint alleges that, "[u]pon information and belief, Defendants Experian and Trans Union transmitted the disputes to MOHELA ..., who falsely 'verified' that the accounts were Plaintiff's." *See* FAC, at ¶ 48; *see also id.* at ¶ 70 ("After being notified by the Plaintiff and the consumer reporting agencies that derogatory information was disputed by the Plaintiff, [MOHELA] failed to conduct timely or proper investigations of the disputed information as required by 15 U.S.C. § 1681s-2(b)."). The Complaint does not allege when the credit reporting agencies notified MOHELA of Plaintiff's disputes, when or in what fashion MOHELA verified that the accounts were Plaintiffs, or when and in what fashion the credit reporting agencies notified Plaintiff of the results of the investigation(s), if at all.

A furnisher of credit information (as opposed to the credit reporting agencies) may be held liable only under FCRA's section 1681s-2(b), which requires a furnisher of credit information **on**

*receiving notice from a CRA that a consumer has disputed a debt*, to investigate the dispute, to report the results of the investigation to the CRA, and, if the furnisher concludes that the disputed debt is inaccurate, incomplete, or unverifiable, to take certain additional remedial measures. 15 U.S.C. § 1681s-2(b)(1). But the FAC omits any specific factual allegations on these points. Therefore, as it pertains to MOHELA, the FAC falls in line with other decisions dismissing generic, formulaic claims consisting only of the recitation of the elements of a claim. *See, e.g., Childress v. Portfolio Recovery Assocs.*, 2019 WL 6830000, at *3 (D.S.C. Nov. 21, 2019), *report and recommendation adopted sub nom. Childress v. Portfolio Recovery Associations*, 2019 WL 6828286 (D.S.C. Dec. 13, 2019); *Ennis v. Equifax Info. Servs., LLC*, No. 7:20-CV-143 (HL), 2021 WL 4944801, at *6 (M.D. Ga. Oct. 22, 2021).

In summary, the FAC fails to plead basic facts regarding when the credit reporting agencies notified MOHELA of Plaintiff's disputes, or when or how the credit reporting agencies informed Plaintiff as to the results of the investigation into those disputes. Plaintiff further fails to allege facts regarding why MOHELA's investigation, especially in the context of the mandatory legal landscape covering the identity theft discharge process with ultimate decision-making vested in the Department, was not reasonable. To the contrary, the Complaint simply includes generic factual assertions (*e.g.,* Experian and Trans Union transmitted the disputes to MOHELA, *see* FAC, at ¶ 48) and legal conclusions (*e.g.,* MOHELA falsely verified information, *see id.*, and MOHELA failed to timely or properly investigate, *see* FAC, at ¶ 70).

The Complaint fails to plead factual allegations supporting a viable FCRA claim against MOHELA. And considering the Department's ultimate decision that Plaintiff's applications for a discharge based on identity theft should be denied, the Complaint fails to plausibly allege that

MOHELA furnished any information that was inaccurate or incomplete.  Judgment in MOHELA's favor is proper on Plaintiff's FCRA claim.

### D.    MOHELA Is Entitled To Judgment On The Pleadings With Respect To The FAC's South Carolina Statutory Claim (Count V).

The Act applies, in relevant part, to the actions of a "consumer reporting agency."  The Act defines "[c]onsumer credit-reporting agency" or "consumer reporting agency" as "a person that, for monetary fees or dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information about consumers for the purpose of furnishing consumer reports to third parties."  S.C. Code § 37-20-110.  There is no dispute that MOHELA is not a "consumer-credit reporting agency" or "consumer reporting agency" as defined by the Act.  To the contrary, MOHELA merely furnishes information to such entities, which compile reports for review and delivery to third parties.

Plaintiff alleges that all defendants failed to handle her disputes in the manner required by the Act.  *See* FAC, at ¶ 93.  Specifically, Plaintiff alleges that defendants failed to handle her dispute by complying with the various provisions of S.C. Code § 37-20-170, including providing Plaintiff with sufficient evidence that the information is true and accurate with respect to the consumer, failing to assist Plaintiff, and failing to respond in writing with the information mandated by that provision.  *Id.*  But the statute plainly imposes those obligations solely on a "consumer reporting agency."  *See* S.C. Code § 37-20-170(A) – (D) (requiring a "consumer reporting agency" to reinvestigate and assist the consumer, requiring a "consumer reporting agency" to deny or admit inaccuracy and provide certain information in the case of a denial, requiring a "consumer reporting agency" to give notice to persons of a correction, and imposing liability on a "consumer credit-reporting agency).  Based on the plain statutory language, the only federal court that has addressed the issue concluded that "a strong argument exists that [the Act]

only regulates CRAs, and does not proscribe the behavior of furnishers of information..." *Muntean v. Discover Fin. Servs.*, 2013 WL 2636003, at *3 n.3 (D.S.C. June 12, 2013) (finding that the proscriptions of Section 37-20-170 only mention CRAs and do no not regulate furnishers of information). Therefore, this claim fails as a matter of law as it pertains to MOHELA, and dismissal with prejudice is appropriate.

CONCLUSION

For the foregoing reasons, MOHELA respectfully requests that the Court grant it judgment on the pleadings with respect to the First Amended Complaint's alternative claims against MOHELA in Counts I, II, and V, that the Court dismiss MOHELA from this lawsuit, and that the Court grant such further relief as it deems just and proper.

This the 20th day of June, 2022.        Respectfully submitted,

/s/John B. Kelchner
John B. Kelchner, Fed. ID No.: 6987
TURNER, PADGET, GRAHAM & LANEY, P.A.
P.O. Box 1473
1901 Main Street, Suite 1700
Columbia, SC 29201
Telephone: 803-227-4234
Facsimile: 803-400-1522
Email: jkelchner@turnerpadget.com
*Attorney for Defendant Higher Education Loan*
*Authority of the State of Missouri d/b/a MOHELA*