IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JESSICA J. TAYLOR, | ) |
|         Plaintiff, | ) ) ) |
| v. | )   CASE NO.: 3:22-CV-01369-SAL ) |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI, d/b/a MOHELA, | ) ) ) ) ) ) |
|         Defendants. | ) ) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**MOHELA'S MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW Defendant Higher Education Loan Authority of the State of Missouri d/b/a MOHELA ("MOHELA"), by and through undersigned counsel, and for its reply memorandum in further support of its motion for judgment on the pleadings as to Counts I, II, and V of Plaintiff Jessica J. Taylor's ("Plaintiff") First Amended Complaint ("Complaint" or "FAC") (Dkt. 26), states as follows:

SUMMARY OF THE NATURE OF THE CASE

Plaintiff is upset that certain student loans—which were approved and funded by the United States Department of Education ("Department")—have been attributed to her. If these student loans are not Plaintiff's, then her displeasure is justified. But whether Plaintiff is legally responsible for these student loans is not the issue framed by Plaintiff's Complaint. The dispute regarding Plaintiff's responsibility for the student loans is properly between Plaintiff and the Department, which has not been named as a defendant.

MOHELA's motion presents a different issue: Does the FAC state legally viable and

well-pleaded claims against MOHELA under 3 separate statutes, the Fair Debt Collection Practices Act ("FDPCA"), 15 U.S.C. § 1692, *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), and the South Carolina Consumer Identity Theft Protection Act (the "Act"), S.C. Code § 37-20-110, *et seq*. The FAC does not, and thus judgment in MOHELA's favor on Plaintiff's alternative claims is justified.

Plaintiff's Response in Opposition to MOHELA's Motion for Judgment on the Pleadings (the "Response") (Dkt. 44) rejects MOHELA's characterization of this case as one involving identity theft. Instead, Plaintiff depicts (at 2) the "true nature" of this case as one of "misattribution and active misidentification." But the pertinent pleadings, federal statutes, and federal regulations clarify that MOHELA did not "attribute" anything to Plaintiff; rather, it was the Department that attributed the student loans to Plaintiff. And these same sources clarify that MOHELA did not "actively identify" Plaintiff as the borrower; rather, it was the Department that originally identified Plaintiff as the responsible party for the student loans at issue and later confirmed that position when it rejected Plaintiff's applications for a loan discharge based on identity theft.

There are a few fundamental truths that the Response does not (and cannot) rebut and this Court should not discard in ruling on MOHELA's motion. *First*, the student loans at issue were approved, funded, and are owned by the Department under the William D. Ford Direct Loan Program ("Direct Loan Program" or "Direct Loans"), 20 U.S.C. § 1087a, *et seq*. *Second*, almost immediately after disbursement of the student loans, the Department transferred servicing to MOHELA under federal law and pursuant to a contract between the Department and MOHELA. *Third*, there is a federally-mandated process that a consumer must work through to attempt to discharge Direct Loans on the basis of identity theft. *See* 34 CFR § 685.215. *Fourth*, it is the Department, not MOHELA, that makes a decision on the claim of identity theft, *see* 34 CFR §

- 3 -

685.215(c), and it ultimately rejected Plaintiff's applications.

Despite the above uncontroverted facts, Plaintiff did not sue the Department. Nor does Plaintiff seek a declaratory judgment that she is not liable for the student loans or alternatively pursue injunctive relief to preclude any collection-related activity with respect to the student loans. Instead, Plaintiff apparently seeks a windfall of statutory, actual, and punitive damages from MOHELA because it performed its statutorily-mandated obligation to assist Plaintiff with anything related to the servicing of the student loans and with her application to the Department to have them discharged.

MOHELA demonstrated in its opening brief that all of Plaintiff's claims fail because they are either legally deficient or because the FAC does not sufficiently plead Plaintiff's claims against MOHELA under the FDCPA, FCRA, and the Act. While the Response casts numerous aspersions about MOHELA and its role as it pertains to this case (many of which are not contained in the FAC), Plaintiff fails to rebut MOHELA's arguments.

Plaintiff's FDCPA claim against MOHELA fails for two independent reasons. It fails because MOHELA is not a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6)(F)(iii), as it began servicing these student loans prior to default. Even were that not the case, MOHELA is exempted from FDCPA liability because its actions were, at all pertinent times, incidental to its "bona fide fiduciary obligation" to the Department, 15 U.S.C. § 1692a(6)(F)(i).

Plaintiff's FCRA claim against MOHELA (Count II) fares no better because the FAC fails to plausibly allege that MOHELA furnished any information that was inaccurate or incomplete, especially in view of the Department's conclusion that Plaintiff was not entitled to a discharge on the basis of identity theft. The FAC also omits key factual allegations necessary to plausibly allege that MOHELA did not reasonably investigate Plaintiff's disputes.

Finally, Plaintiff's claim against MOHELA under the Act fails as a matter of law because the statutory provisions relied upon by Plaintiff clearly apply to credit reporting agencies only, not furnishers of information like MOHELA. In addition, based on the manner in which the Response now articulates Plaintiff's claim under the Act, Plaintiff's claims under the Act are preempted by the FCRA.

On these facts, and for the reasons explained herein, the FAC does not plausibly allege violations by MOHELA of the FDCPA, FCRA, or the Act. Plaintiff's claims against MOHELA should be dismissed with prejudice.

## ARGUMENT

**A.    The Response Does Not Salvage The FAC's FDCPA Claim (Count I) From Judgment In MOHELA's Favor.**

The Response repeats (at 7) Plaintiff's theory of the case: Plaintiff is not responsible for the student loans and never has been, so anything that arguably looks like collection activity by MOHELA was improper. While the Court may accept that underlying factual premise as true for purposes of resolving MOHELA's motion, that does not mean that the FDCPA applies to MOHELA with respect to its activity at issue. The FDCPA does not apply to MOHELA on the facts of this case. Thus, judgment in MOHELA's favor is appropriate on the FDCPA claim.

**1.    The Response does not rebut MOHELA's argument that it is not a "debt collector" under the plain language of the FDCPA and as interpreted by this Court and federal courts around the country.**

The Court's determination regarding MOHELA's entitlement to judgment on Count I should start in the first instance with the plain language of the FDCPA. Initially, the FDCPA defines a "consumer" as "any natural person obligated or *allegedly obligated to pay any debt*." 15 U.S.C. § 1692a(3) (emphasis added). Thus, there is no dispute that the FDCPA's protections could extend to Plaintiff, who maintains that she does not properly own the debt. Next, the FDCPA

- 5 -

defines a "debt" as "any obligation or ***alleged obligation*** of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added). Thus, there is no dispute that the student loan accounts at issue are generally subject to the FDCPA prohibitions.

Nevertheless, while the FAC alleges a number of alleged FDCPA violations (*see* FAC, at ¶ 65(a)-(d)), each of the FAC's pled violations, found in 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(8), and 1692f(1), confine liability to entities meeting the definition of a "debt collector." Thus, regardless of whether Plaintiff is a "consumer" subject to FDCPA protection and whether the student loans at issue are "debts" subject to FDCPA application, Plaintiff can only maintain a viable FDCPA claim against MOHELA if it is a "debt collector" defined by the FDCPA as it pertains to the facts at issue.

Under 15 U.S.C. § 1692a(6)(F)(iii), a person collecting a debt is not a "debt collector" if the collection activity "concerns a debt which was not in default at the time it was obtained by such person." Under this definitional structure, and contrary to Plaintiff's arguments (at 8), it is MOHELA's status that is dispositive. The Response's arguments (at 8) that Plaintiff does not owe the student loans or that she can never be in default on loans that are not hers are irrelevant, as "debt" is defined to include accounts that Plaintiff is *allegedly* obligated on. What matters is whether MOHELA is a "debt collector" as it pertains to the accounts at issue. MOHELA is not.

As Plaintiff concedes (at 8), MOHELA's opening brief included a litany of cases comprising string citations and holding that entities similarly situated to MOHELA did not meet the definition of "debt collector" under the FDCPA where MOHELA received the student loans at

issue for servicing almost immediately after origination and prior to any default.  ***Tellingly, in advance of her arguments, Plaintiff's Response does not cite a single case.***  Instead, the Response argues (at 8) that MOHELA "should account for why [the servicers in the cases cited by MOHELA] benefitted from those protections and what if anything, MOHELA shares with those entities."  Plaintiff's argument is nonsensical.  This is a straightforward legal issue of statutory construction that is ripe for resolution at this stage in the case.  The pleadings establish the record in terms of whether MOHELA qualifies as a "debt collector," no different from many of the cases cited by MOHELA.  And on this point, it is notable that Plaintiff does not articulate any additional discovery that would be necessary to the Court's resolution of this straightforward issue of statutory interpretation.

While perhaps creative, the Response's arguments ignore the plain language of the FDCPA's definitional structure and are unsupported by the citation of any case.  The Response cannot remedy the simple fact that the FAC does not (and cannot) plead that MOHELA is a "debt collector," as defined by the FDCPA, where it began servicing the student loans prior to default.  And if MOHELA is not a "debt collector," all of Plaintiff's alternative FDCPA violations fail as a matter of law.  Thus, dismissal of Count I is appropriate.

    **2.**    **The Response cites no authority and contains no persuasive argument rebutting MOHELA's position that it is exempted from the FDCPA because it was, at all pertinent times, acting in its capacity as a bona fide fiduciary to the Department.**

In responding to MOHELA's arguments regarding its status as a bona fide fiduciary to the Department, the Response creates (at 9-10) a strawman and tears it down.  The Response dedicates most of its arguments to the notion that MOHELA is *not* a guaranty agency, and thus the express exemption found at 15 U.S.C. § 1692(a)(6)(F)(i) does not apply to MOHELA.  Plaintiff again cites zero supporting case law.  Nor could Plaintiff as this exemption is not expressly limited to guaranty

agencies.

As set forth in MOHELA's brief, and as alleged in Plaintiff's own FAC (¶¶ 22, 24), the student loans at issue were made pursuant to a Master Promissory Note, which reflects that the student loans were funded by the Department and, as disclosed in the Master Promissory Note, would be serviced by third party entities (like MOHELA) that contract with the Department. As set forth in MOHELA's brief, and not rebutted by Plaintiff, the Department contracts with third-party servicers to perform the servicing function pursuant to 20 U.S.C. § 1087f(a). MOHELA was selected as one such servicer in 2011 (*see* Dkt. 41-1, at 4-5) and every aspect of that servicing is highly regulated by the Department. *See* Dkt. 41-1, at 4, n.1. Beyond this general relationship, the specific process by which Direct Loans may be discharged on the basis of identity theft, the cornerstone issue in this case, is governed by 34 CFR § 685.215. *Id.* at 5, 12.

The Response chooses to ignore these uncontroverted facts established by the pleadings and federal statutes and regulations, again relying (at 9-10) exclusively on its arguments that MOHELA is distinct from a guaranty agency. The fundamental flaw in Plaintiff's arguments, however, is that the Section 1692(a)(6)(F)(i) exemption is not limited to guaranty agencies. In fact, courts in this Circuit have applied this exemption to a host of different servicing entities. For example, in *Schmidt v. Wells Fargo Home Mortg.*, No. 3:11-CV-059, 2011 WL 1597658, at *4 (E.D. Va. Apr. 26, 2011), *aff'd*, 482 F. App'x 868 (4th Cir. 2012), the court held that Wells Fargo was not subject to FDCPA liability and noted that "courts in this district have consistently held, without reversal, that mortgage servicers are not debt collectors under the FDCPA." *Id. (*granting motion to dismiss FDCPA claim*); see also Ruggia v. Washington Mut.*, 719 F. Supp. 2d 642, 648 (E.D. Va. 2010), *aff'd*, 442 F. App'x 816 (4th Cir. 2011) (noting that creditors, mortgagors, and mortgage servicing companies are not "debt collectors" under the FDCPA) (grating motion to

dismiss FDCPA claim).

Without citing any authority, the Response also repeats (at 10) Plaintiff's argument that the inquiry must be different because Plaintiff did not actually owe the debt. But a recent appellate decision persuasively rejects Plaintiff's argument. In *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F.3d 1302 (11th Cir. 2020), the Eleventh Circuit affirmed dismissal of the plaintiff's FDCPA claim. The *Darrisaw* court held that "[t]he text of the [FDCPA] makes clear that a person may attempt to collect a debt "incidental to a bona fide fiduciary obligation" whether the debt sought to be collected is "owed or due" another or only "asserted to be owed or due another." *Id.* at 1306. Thus, under the exemption, the entity is not a "debt collector" even if the debt is not actually owed. *Id.* at 1308. There simply is no reason, at least Plaintiff does not offer one, why this same analysis applying to guaranty agencies should not be extended to the servicer of a Direct Loan for the Department.

In summary, there is no dispute that the student loans at issue were funded by the Department under the Direct Loan program, that the student loans were assigned to MOHELA for servicing pursuant to its contract with the Department, and that all of MOHELA's activities with respect to the loans (whether that be general servicing, collection activity, or assisting Plaintiff through the identity theft discharge process mandated by federal regulations) were incidental to MOHELA's bona fide fiduciary obligations to the Department. MOHELA is entitled to judgment on Plaintiff's FDCPA claim for this alternative reason.

**B.     MOHELA Is Entitled To Judgment On The Pleadings With Respect To The FAC's FCRA Claim (Count II).**

MOHELA's opening brief explains (at 12-13) that furnishers of credit information (as opposed to credit reporting agencies) may be held liable only under FCRA's section 1681s-2(b), which requires a furnisher of credit information upon receiving notice from a CRA that a consumer

has disputed a debt, to investigate the dispute, to report the results of the investigation to the CRA, and, if the furnisher concludes that the disputed debt is inaccurate, incomplete, or unverifiable, to take certain additional remedial measures. 15 U.S.C. § 1681s-2(b)(1).

As Plaintiff concedes (at 12), the focus of the inquiry is on the furnisher's conduct: Did the furnisher reasonably investigate and, if necessary, modify *inaccurate* information? *See, e.g., Palmer v. PNC Mortg.*, No. 3:15CV421, 2015 WL 7424294, at *2 (W.D.N.C. Nov. 20, 2015); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). MOHELA's primary challenge to Plaintiff's FCRA claim is that the FAC does not plausibly allege facts establishing that MOHELA reported *inaccurate* information.

34 CFR § 685.215 governs the process for discharging a Direct Loan on the basis of identity theft. And once Plaintiff submitted a compliant application for discharge, it was the Department, which funded and owns the student loans, that makes the final decision as to whether to approve or deny Plaintiff's application. *See* 34 CFR § 685.215(c). Here, the Department denied Plaintiff's applications for a discharge based on identity theft. *See* Answer (Dkt. 40), at ¶¶ 40 and 41, and Ninth Defense.

The Response attempts to downplay (at 11, 13) the fact that the Department denied Plaintiff's discharge application, arguing (at 13) that "Plaintiff doesn't have to have the discharge denial to demonstrate that fundamentally, MOHELA furnished inaccurate information to the credit reporting agencies." But the denial of the loan discharge applications is vital when assessing whether Plaintiff plausibly alleged that MOHELA reported inaccurate information following Plaintiff's dispute and MOHELA's investigation. At all relevant times, MOHELA was caught in the middle of a disagreement between Plaintiff and the Department. MOHELA is contractually bound by the Department to service the student loans at issue (including furnishing information on

the credit report of the alleged borrower) while those loans are considered valid. And here, while MOHELA worked with Plaintiff to process her identity theft discharge application for review by the Department, MOHELA was required to report the status of the student loans. After the Department denied Plaintiff's request for a discharge, MOHELA was required to report the status of the student loans. Plaintiff may disagree with the Department's ultimate decision, but that does not mean that the FAC plausibly alleges that MOHELA reported inaccurate information or failed to reasonably investigate Plaintiff's disputes.

In addition, MOHELA argued (at 15) that the FAC is deficient with respect to allegations regarding MOHELA's receipt of disputes from the credit reporting agencies and investigation into those disputes. On this point, the FAC simply alleges in conclusory fashion that, "[u]pon information and belief, Defendants Experian and Trans Union transmitted the disputes to MOHELA ..., who falsely 'verified' that the accounts were Plaintiff's." *See* FAC, at ¶ 48; *see also id.* at ¶ 70 ("After being notified by the Plaintiff and the consumer reporting agencies that derogatory information was disputed by the Plaintiff, [MOHELA] failed to conduct timely or proper investigations of the disputed information as required by 15 U.S.C. § 1681s-2(b)."). The FAC does not allege when the credit reporting agencies notified MOHELA of Plaintiff's disputes, when or in what fashion MOHELA verified that the accounts were Plaintiff's, or when and in what fashion the credit reporting agencies notified Plaintiff of the results of the investigation(s), if at all.

The Response does not substantively respond to MOHELA's arguments on this point. While the Response includes (at 3-5) an itemization of the alleged underlying facts pled in the FAC, nowhere in that list does Plaintiff point to allegations regarding these material aspects of her FCRA claim because they are simply not found in the FAC. A simple recitation of the elements of an FCRA claim without specific underlying factual allegations is insufficient. *See, e.g.,*

*Childress v. Portfolio Recovery Assocs.*, 2019 WL 6830000, at *3 (D.S.C. Nov. 21, 2019), *report and recommendation adopted sub nom. Childress v. Portfolio Recovery Associations*, 2019 WL 6828286 (D.S.C. Dec. 13, 2019); *Ennis v. Equifax Info. Servs., LLC*, No. 7:20-CV-143 (HL), 2021 WL 4944801, at *6 (M.D. Ga. Oct. 22, 2021).

The Response's arguments (at 11-15) on her FCRA claim boil down to an examination of the applicable pleading standards and an overview of a furnisher's obligation to conduct a reinvestigation and correct errors. But Plaintiff's analysis does not cite any cases rebutting MOHELA's arguments regarding the insufficiency of the FAC to plausibly allege material elements of her claim. Rather, Plaintiff simply recites the FAC's factual allegations and concludes that a jury should decide whether MOHELA's reinvestigations were reasonable. Because Plaintiff's FAC still fails to plausibly allege a violation of the FCRA by MOHELA, judgment in MOHELA's favor is proper on Plaintiff's FCRA claim.

**C.      The FAC's South Carolina Statutory Claim (Count V) Fails As A Matter Of Law And Is Preempted.**

    **1.      The Act does not apply to MOHELA on the pleaded facts.**

The Response concedes (at 16) that MOHELA "may not be subject to all [of the Act's] requisites." This concession is made following the FAC's generalized assertion that all defendants violated the very same requirements of the Act. *See* FAC, Count V generally (naming all defendants) and ¶ 93 (alleging the manner in which all defendants allegedly violated the Act).

The FAC's pled violations of the Act fall under § 37-20-170. That provision requires that Plaintiff, after she lodged a written dispute, receive notice with sufficient evidence that the information is true and accurate, that Plaintiff be assisted with preparing a written dispute (if requested), and that Plaintiff receive a response within 30 days. *Compare* FAC, at ¶ 93 *with* § 37-20-170. In the event that an inaccuracy is denied, Plaintiff shall also receive the basis for the

denial, a copy of the consumer's file, a description of the procedures used to investigate (if requested), and sufficient evidence that the information is true and accurate. *Id.*

As MOHELA argued in its opening brief, the Act expressly confines these obligations to a "consumer reporting agency." *See* § 37-20-170. Plaintiff's Response concedes (at 15) the obvious, specifically that MOHELA is not a "consumer reporting agency." MOHELA also cited the only decision that is has located on this topic, which concluded that "a strong argument exists that [the Act] only regulates CRAs, and does not proscribe the behavior of furnishers of information..." *Muntean v. Discover Fin. Servs.*, 2013 WL 2636003, at *3 n.3 (D.S.C. June 12, 2013) (finding that the proscriptions of Section 37-20-170 only mention CRAs and do no not regulate furnishers of information). ***Tellingly, the Response does not even mention Muntean, much less attempt to distinguish it. Nor does Plaintiff cite any additional authorities whatsoever supporting her theory that the obligations of § 37-20-170 reach beyond the consumer reporting agencies to furnishers of information, like MOHELA.***

Without citing any supporting authority, Plaintiff attempts to salvage her claims against MOHELA under the Act by arguing (at 15) that MOHELA is a "person" under the Act and, therefore, MOHELA can be held liable under the penalty provisions of §§ 37-20-170(D) and (E). Notably, Plaintiff does not cite any authority extending the penalty provisions of §§ 37-20-170(D) and (E) beyond a "consumer reporting agency" to another type of entity. Nor has MOHELA's diligent research revealed any decisions reaching this conclusion.

Beyond being unsupported by any state or federal case law interpreting the Act, Plaintiff's position simply does not make sense. As detailed above, the only alleged violations of the Act pled by Plaintiff arise under §§ 37-20-170(A) and (B). Those violations center on the failure to review the contents of a credit report, cure any inaccuracy, provide Plaintiff information regarding

the procedures to ensure accuracy of a credit report, and to assist Plaintiff. *See* FAC, at ¶ 93. Because MOHELA is not a consumer reporting agency, it has no ability to undertake such action, much less to violate the provisions by failing to do so. While the penalty provisions indisputably also create liability for a "person," that liability runs only to entities, distinct from the consumer reporting agencies, that "violate[s] this chapter." *See* §§ 37-20-170(D) and (E). MOHELA did not violate any section of "this chapter" pled in the FAC, and thus MOHELA is not subject to liability under the Act on the FAC's claims.

    **2.    The Response clarifies the nature of Plaintiff's claims against MOHELA under the Act, and reveals that Plaintiff's articulated claim is preempted by the FCRA.**

The FAC contains only a generalized, rote summary of the Act's requirements. The FAC's focus is on the provisions applying to consumer reporting agencies and is then accompanied by the conclusion that all of the defendants (*i.e.,* credit reporting agencies and furnishers alike) violated the Act. The Response tacitly concedes this reality and acknowledges (at 16) that MOHELA is not subject to all of the Act's obligations. So, the Response now clarifies that Plaintiff's claims against MOHELA rest (at 16) on the assertion that "MOHELA steadfastly furnished inaccurate and/or misleading information to the consumer reporting agencies / consumer credit-reporting agency defendants and willfully continued a pattern of cursory investigation and furnished inaccurate and misleading information."[1]

---

[1] This articulation of Plaintiff's theory of MOHELA's liability under the Act is not included in the FAC, which only pled in conclusory fashion that all defendants violated the Act by failing to correct the admitted inaccuracy, failing to inform any person who previously received a report containing an inaccuracy in the last 6 months of the inaccurate information, failing to reinvestigate the inaccuracy, and failing to provide Plaintiff with sufficient evidence that the information is true. *See* FAC, at ¶¶ 95-6.

The Response's new articulation of her theory of liability against MOHELA compels the conclusion that Plaintiff's claim is preempted under the FCRA and should be dismissed for this additional reason.  In *Muntean*, like Plaintiff here (at least as articulated through the Response), the plaintiff argued that defendant violated the Act by failing to provide the credit reporting agencies with accurate information relating to the disputed account at issue.  *See Muntean*, 2013 WL 2636003, at *3.  This Court properly concluded that claim was preempted by the FCRA, 15 U.S.C. § 1681t(b)(1)(F).  *Id.*

"Section 1681t provides that "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title ." *Id.* (quoting 15 U.S.C. § 1681t(b)(1)(F)). "Section 1681s–2 describes the responsibilities of those who report credit information to CRAs." *Id.*  As discussed above, Plaintiff attempts to plead violations of Section 1681s-2(b) against MOHELA in Count II.

The *Muntean* court concluded that plaintiff's claim under the Act "runs into the teeth of the FCRA preemption provision." *Id.* at *4 (quoting *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010)).  Like here (at least as articulated by the Response), the claims in *Muntean* related directly to the furnisher's obligation to provide accurate credit information to the credit reporting agencies. *Id.* at *4.  The same is true here.  Because Plaintiff's claims under the Act seek to use § 37–20–170 as a 'requirement or prohibition' under South Carolina law concerning "subject matter regulated under section 1681s–2," Plaintiff's claims are "squarely preempted by the plain language of the FCRA." *Id.* at *4 (quoting *Ross,* 625 F.3d 813) (quoting 15 U.S.C. § 1681t(b)(1)(F)).  In summary, even if the Court concludes that the sections of the Act pled in the FAC apply to MOHELA (they do not), Plaintiff's claims against MOHELA under the Act are preempted and should still be dismissed.

**CONCLUSION**

For the foregoing reasons, MOHELA respectfully requests that the Court grant it judgment on the pleadings with respect to the First Amended Complaint's alternative claims against MOHELA in Counts I, II, and V, that the Court dismiss MOHELA from this lawsuit, and that the Court grant such further relief as it deems just and proper.

This the 14th day of July, 2022.             Respectfully submitted,

/s/John B. Kelchner
John B. Kelchner, Fed. ID No.: 6987
TURNER, PADGET, GRAHAM & LANEY, P.A.
P.O. Box 1473
1901 Main Street, Suite 1700
Columbia, SC 29201
Telephone: 803-227-4234
Facsimile: 803-400-1522
Email: jkelchner@turnerpadget.com
*Attorney for Defendant Higher Education Loan Authority of the State of Missouri d/b/a MOHELA*